UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jackson Javier Batioja Cuero

    v.                                      Civil No. 23-cv-065-LM-AJ
                                                Opinion No. 2024 DNH 075 P

Warden, FCI Berlin

**O R D E R**

      Petitioner Jackson Javier Batioja Cuero, a federal prisoner previously incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking to compel the Bureau of Prisons ("BOP") to apply "time credits" he earned under the First Step Act ("FSA"), and to put him in a halfway house. See doc. nos. 1, 6. Cf. Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015) (district court may adjudicate claims in § 2241 petition challenging BOP's calculation of sentence credits and alleged unlawful delay in releasing petitioner to community-based custodial setting). Before the court is the Respondent Warden's Second Motion for Summary Judgment (doc. no. 8), arguing that the petition should be denied because Batioja Cuero is subject to a final order of removal, rendering him ineligible for the application of FSA time credits, see 18 U.S.C. § 3632(d)(4)(E)(i), and because he is ineligible for halfway house placement. Petitioner objects. See doc. nos. 10, 15.

## STANDARD OF REVIEW

Summary judgment is appropriate in habeas proceedings as in other civil cases when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Bader v. Warden, No. 02-cv-508-JD, 2003 DNH 90, 2003 WL 21228520, at *3, (D.N.H. May 28, 2003) (citations omitted), aff'd, 488 F.3d 483 (1st Cir. 2007); see also Gattineri v. Wynn MA, LLC, 93 F.4th 505, 509 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). A genuine factual dispute exists if "the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party," and a material fact is one "that has the potential of affecting the outcome of the case." Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (quotation omitted). In making that determination, the court draws all reasonable inferences from the properly supported facts in favor of the nonmoving party. Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024).

## BACKGROUND

The following facts are derived from this court's record or from matters susceptible of judicial notice. These facts are undisputed, except where otherwise indicated.

Batioja Cuero is a federal prisoner from Ecuador. He was convicted in the U.S. District Court for the Middle District of Florida of conspiracy to possess with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States. See United States v. Batioja Cuero, No. 8:15-cr-

2

00224-VMC-AAS-1 (M.D. Fla. Jan. 7, 2016) (ECF No. 89). On January 7, 2016, that court sentenced Batioja Cuero to a 138-month term of imprisonment with a five-year term of supervised release, see id., and on April 17, 2024, that court reduced his term of imprisonment to 135 months or time served, whichever was greater, see id. (ECF No. 164).

At all times relevant to his petition, Batioja Cuero has been the subject of an Immigration and Customs Enforcement ("ICE") detainer. While incarcerated, Batioja Cuero has participated in multiple courses and programs yielding time credits under the FSA. As of December 2, 2023, BOP records show that Batioja Cuero had earned 780 days of FSA credits. Batioja Cuero asserts that he received notice in October 2023 that he had been approved for placement in a halfway house beginning in January 2024.

Before that date arrived, on November 16, 2023, an ICE officer served a set of Department of Homeland Security ("DHS") forms on Batioja Cuero at FCI Berlin, including a "Notice and Order of Expedited Removal: Determination of Inadmissibility" ("NOER"). Batioja Cuero neither signed the DHS forms on November 16, 2023, nor made any statement to the ICE officer who delivered them. Batioja Cuero asserts that the ICE officer did not provide him with an adequate opportunity to make a statement.

On the same day that ICE served the NOER, FCI Berlin staff received a revised immigration detainer for Batioja Cuero, stating that he is the subject of a final order of removal. As a result, BOP changed the petitioner's records to show

3

that he had become "FSA Ineligible." Because of Batioja Cuero's ICE detainer and removal order, BOP now considers him to be unqualified for prerelease custody and ineligible for a halfway house.

Documents filed by Batioja Cuero indicate that he submitted an administrative appeal of the NOER to New Hampshire offices of the U.S. Citizenship and Immigration Services ("USCIS") and ICE, requesting Board of Immigration Appeals ("BIA") review, claiming that the NOER is invalid, was improperly served, and is inapplicable to a person in his circumstances. The documents comprising that request for review also acknowledge that Batioja Cuero did not make any statement to the ICE officer who served the NOER and add that Batioja Cuero intends to apply for asylum and fears returning to his home country. ICE Assistant Field Office Director Todd Thurlow has averred that because ICE is now aware of Batioja Cuero's statements regarding his "fear of return," ICE will refer him "to an asylum officer at the time he is taken into ICE custody for a credible fear interview prior to executing his removal order."[1] Doc. no. 14-1 ¶ 6.

---

[1] A referral for a "credible fear interview" precedes the removal of any non-citizen designated for expedited removal who tells the examining immigration officer that the person intends to apply for asylum, is fearful of persecution or torture, or fears returning to that person's home country. See 8 C.F.R. §§ 208.30(b), 235.3(b)(4) (in such circumstances "the inspecting officer shall not proceed further with removal of the [noncitizen] until [the noncitizen] has been referred for an interview by [a USCIS] asylum officer"). The credible fear interview is a screening procedure which sets a low bar for asylum applicants and allows for consideration of the person's potential eligibility for withholding of removal or relief under the Convention Against Torture. See generally Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 110 & n.5 (2020); see also 8 C.F.R. § 208.30(d).

At some point after Batioja Cuero filed this § 2241 petition, BOP transferred him to FCI Allenwood Low in Pennsylvania, where he remains today. BOP projects he will be released on November 4, 2025.[2]

The Warden moves for summary judgment on all of the claims in the § 2241 petition, maintaining that Batioja Cuero is ineligible for the application of his FSA time credits because the NOER is an unreviewable final order of removal. See doc. no. 8. Batioja Cuero objects, contending that his NOER is not final because he has appealed it to the BIA; he considers the NOER to be invalid and inapplicable to him; and an as-yet unscheduled credible fear interview must occur before he can be removed. See doc. nos. 10, 15. He further contends that BOP violated the Ex Post Facto Clause by refusing to apply his FSA time credits. See doc. nos. 10, 15.

## DISCUSSION

I.   The FSA's Exception For Prisoners With Final Orders of Removal

The FSA permits eligible federal prisoners to earn time credits toward early release or earlier placement in prerelease custody (e.g., a halfway house or home confinement before the prisoner is released from BOP custody) if they participate in qualifying programs and activities while in BOP custody. See 18 U.S.C. § 3632(d)(4)(A), (C). One pertinent exception to the application of FSA time credits is set forth in 18 U.S.C. § 3632(d)(4)(E)(i):

---

[2] See BOP Online Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Sept. 9, 2024).

> **(E) Deportable prisoners ineligible to apply time credits.**
>
> (i) **In general.** A prisoner is ineligible to apply time credits under [the FSA] if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act).

18 U.S.C. § 3632(d)(4)(E)(i) (citing 8 U.S.C. § 1101(a)(17) (defining "immigration laws" as all federal laws relating to "the immigration, exclusion, deportation, expulsion, or removal" of non-citizens)).

District courts across the country have found that NOERs like Batioja Cuero's are "final order[s] of removal" for purposes of 18 U.S.C. § 3632(d)(4)(E)(i). See, e.g., Alexander v. Healy, No. 4:23-cv-2384, 2024 WL 2020281, at *3, (N.D. Ohio May 7, 2024); Pineda v. Cruz, No. 23-4939 (RMB), 2024 WL 1526120, at *3 (D.N.J. Apr. 9, 2024) ("Pineda I"), recons. denied, 2024 WL 2860289, (D.N.J. Jun. 6, 2024) ("Pineda II"); Ceron v. Engleman, No. 23-3388-SSS (AGR), 2024 WL 967858, at *2, (C.D. Cal. Jan. 24, 2024), R&R adopted, 2024 WL 968850 (C.D. Cal. Mar. 6, 2024); see also Harriot v. Jamison, No. 24-CV-208 (AT) (JLC), 2024 WL 2981150, at *4, 2024 U.S. Dist. LEXIS 105813, at *10 (S.D.N.Y. June 13, 2024) (Cott, Mag. J., R&R) ("The NOER, which was entered by an immigration officer and approved by a supervisor, is a final order of removal that prevents the BOP from applying FSA time credits in [petitioner's] case as a matter of law."). This court has found no contrary authority. For the reasons explained below, the court finds this case law persuasive in concluding that the NOER at issue is "final."

6

II.   Finality of Petitioner's NOER

   A.   Statutory Definitions and Regulations

The provision of the FSA at issue in this case, 18 U.S.C. § 3632(d)(4)(E)(i), makes a person ineligible for the application of earned time credits if that person is the subject of a "final order of removal" under any provision of the federal immigration laws. A "final order of removal" is not specifically defined in either the Immigration and Nationality Act ("INA") or the FSA. In Nasrallah v. Barr, 590 U.S. 573, 579 (2020), the Supreme Court defined that term in the deportation context as a "final order 'concluding that the noncitizen is deportable or ordering deportation.'" Id. (quoting 8 U.S.C. § 1101(a)(47)(A)).

Batioja Cuero's NOER states that it was issued under 8 U.S.C. § 1225(b)(1). See doc. no. 12-2. The NOER in this court's record has an immigration officer's signature and the signature of another immigration officer who appears to be a supervisor.[3] The NOER explicitly orders Batioja Cuero's removal under the INA as follows:

> Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the [INA, 8 U.S.C. § 1225], and by the authority contained in section 235(b)(1) of the [INA, 8 U.S.C. § 1225(b)(1)], you are found to be inadmissible as charged and ordered removed from the United States.

Doc. No. 12-2 at 1. ICE Assistant Field Office Director Thurlow has averred that ICE records indicate that the NOER is final. Doc. no. 14-1 ¶ 7; doc. no. 12-1 ¶ 4.

---

[3] The form is signed by a person whose signature is followed by the initials, "SDDO." Those initials appear to stand for Supervisory Detention and Deportation Officer. DeLeon v. Holder, 592 F. App'x 216, 216 (4th Cir. 2015) (per curiam).

DHS's immigration regulations state that an expedited order of removal issued by an immigration officer that has been reviewed and approved by an appropriate supervisory immigration officer is considered "final." 8 C.F.R. § 235.3(b)(7). Batioja Cuero has argued that he did not receive an adequate opportunity to make a statement to the officer who delivered the papers designating him for expedited removal, but he has not presented any evidence to suggest that the pertinent supervisory officer failed to properly review and approve the NOER. This court presumes that there is no procedural irregularity in that respect. Cf. Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 174 (2004) ("'The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" (citation omitted)). The NOER is thus "final" under DHS's immigration regulations. And BOP's decision to classify Batioja Cuero as the subject of a "final" order is consistent with those regulations.

B.  <u>Pending Administrative Appeal</u>

Without disputing that his NOER designates him as an inadmissible non-citizen who is ordered removed, and without pointing to any way in which the NOER is not "final" under 8 C.F.R. § 235.3(b)(7), Batioja Cuero maintains that the NOER is not final because of his pending BIA appeal. He cites the INA's definition of a final "order of deportation," see 8 U.S.C. § 1101(a)(47)(B), which considers the

8

earlier of the date when the BIA affirms the order or the date when the time for seeking BIA review has expired to be the date the order becomes final.

The cited statutory definition of a final order of deportation in the INA (not specifically cross-referenced in the FSA) does not provide an answer to the operative question here of whether the NOER is a final order of removal for purposes of the pertinent provision of the FSA. That INA definition "only contemplates orders subject to review by the [BIA]," F.J.A.P. v. Garland, 94 F.4th 620, 633 (7th Cir. 2024), and the NOER here is not subject to BIA review. The INA provides, in pertinent part:

> **Limitation on administrative review.** Except as provided in subparagraph (B)(iii)(III), a [NOER entered by an immigration officer or asylum officer] . . . is not subject to administrative appeal . . . .

8 U.S.C. § 1225(b)(1)(C) (emphasis added).[4] The pertinent regulation similarly provides for no administrative review:

> **No Entitlement to Hearings and Appeals.** Except as otherwise provided in this section, [a noncitizen designated for expedited removal] is not entitled to a hearing before an immigration judge . . . or to an appeal of the expedited removal order to the Board of Immigration Appeals.

8 C.F.R. § 235.3(b)(2)(ii) (emphasis added). The statutory definition of a final order of deportation in 8 U.S.C. § 1101(a)(47) does not apply to Batioja Cuero's NOER.

---

[4] The cited subsection, 8 U.S.C. § 1225(b)(1)(B)(iii)(III), authorizes the Attorney General to establish procedures for prompt review of an asylum officer's decision that the noncitizen does not have a credible fear of persecution. Those regulations are not applicable to Batioja Cuero's circumstances as there is no decision of an asylum officer at issue.

9

Given those limits on the BIA's authority, Batioja Cuero's requests evidently seek review and relief the BIA will not provide. In the absence of any showing here that the BIA has in fact declined to dismiss the appeal or has granted relief in his case, Batioja Cuero's evidence that he has asked the BIA to review his claims does not generate any material factual dispute, and the court grants the Warden's motion for summary judgment on this issue regarding the BIA appeal.

C.   Credible Fear Interview

Batioja Cuero further argues that his NOER is nonfinal because his removal cannot proceed—as he has a right to appear before an asylum officer for a credible fear interview and to the procedures that follow such an interview. See generally Kiakombua v. Wolf, 498 F. Supp. 3d 1, 13 (D.D.C. 2020) (discussing credible fear procedures).[5] The Warden argues that this NOER became final and remains final even though ICE will refer Batioja Cuero to an asylum officer for a credible fear interview in the future.

The court agrees with the Warden. Batioja Cuero's NOER became final under the applicable immigration regulations before he raised the claims that stopped his

---

[5] The procedures that follow a credible fear interview depend on the asylum officer's findings, but may include an immigration judge's de novo and expedited review of the asylum officer's "negative" credible fear determination, or the asylum officer's positive determination and referral of the person for full immigration proceedings, consideration of an asylum application, or withholding of removal. See generally Kiakombua, 498 F. Supp. 3d at 13 (discussing procedures under 8 U.S.C. § 1225(b)(1)(B)(ii)-(iii) and pertinent agency regulations, including 8 C.F.R. § 208.30(d)-(g)).

10

removal and triggered his referral for a credible fear interview. True, it appears that ICE cannot lawfully execute Batioja Cuero's NOER at this time. See 8 U.S.C. § 1225(b)(1)(A)(i) (immigration officer shall order removal without further hearing or review unless that person indicates intent to apply for asylum or fear of persecution); 8 C.F.R. § 235.3(b)(4) (in such cases, examining immigration officer "shall not proceed further with removal . . . until the [noncitizen] has been referred for an interview by an asylum officer"). But nothing in those laws and regulations automatically revokes the NOER, or makes it otherwise nonfinal, even though Batioja Cuero might ultimately succeed in obtaining a decision to vacate his NOER. See, e.g., Mendoza-Linares v. Garland, 51 F.4th 1146, 1152 (9th Cir. 2022) ("Because a removal order had already been issued prior to the initiation of the credible-fear review process, the effect of the asylum officer's actions was to uphold and adopt that expedited removal order."), cert. denied, 144 S. Ct. 1392, (2024). The prospect that Batioja Cuero might obtain relief in such proceedings does not render his NOER nonfinal. See Jimenez v. Warden, FCI Fort Dix, No. CV 24-773 (KMW), 2024 WL 3568714, at *1, (D.N.J. July 26, 2024) ("That Petitioner was also granted immigration relief . . . under the CAT [Convention Against Torture] does not change the fact that he has received a final order of removal." (citing Nasrallah, 590 U.S. at 582)); Giang Van Doan v. FCI Berlin Warden, No. 23-cv-183-LM-AJ, 2024 WL 1095894, at *4, (D.N.H. Feb. 21, 2024) ("Neither Petitioner's prior release from ICE custody, nor any determinations regarding his likelihood of removal, nor any temporary grant of discretionary relief, have rendered the underlying Removal

11

Order nonfinal."), R&R approved, 2024 WL 1093756, (D.N.H. Mar. 13, 2024). For those reasons, evidence of Batioja Cuero's assertion of fears triggering his entitlement to a credible fear interview, and ICE's plan to refer Mr. Batioja Cuero to an asylum officer once he enters ICE custody, do not provide grounds for concluding that the NOER is nonfinal.

III. Validity of NOER

Batioja Cuero also claims that his NOER is not a valid expedited removal order under 8 U.S.C. § 1225(b)(1). Such orders, he argues, are authorized only for noncitizens who can be deemed to be "arriving" (which he claims he is not) and those arrested at sea who have not been physically present in the United States for more than two years (and he points out that he has been incarcerated much longer than two years). See 8 U.S.C. § 1225(b)(1)(A)(i), (iii); cf. Pineda II, 2024 WL 2860289, at *2 (noncitizens who have been arrested at sea may be subject to expedited removal, citing 8 U.S.C. § 1225(a)(1)).

To the extent that the grant of habeas relief to Batioja Cuero would require this court to consider his claims challenging the underlying validity of the NOER, the jurisdiction-stripping provisions of the INA are implicated. Judicial review of NOERs is "severely curtailed" by the INA. Alvarado-Herrera v. Garland, 993 F.3d 1187, 1190 (9th Cir. 2021) (citing 8 U.S.C. § 1252(a)(2)(A) & (e)).

> Judicial review of expedited removal orders is governed by § 1252 of Title 8, which provides that "no court shall have jurisdiction to review" an expedited removal order except as provided in subsection (e). 8 U.S.C. § 1252(a)(2)(A). Subsection (e) in turn limits judicial review to

> three narrow issues, each of which must be raised in habeas corpus proceedings: "whether the petitioner is an alien"; "whether the petitioner was ordered removed" under an expedited removal order; and whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident. [Id.] § 1252(e)(2).

Alvarado-Herrera, 993 F.3d at 1192. The INA further limits the scope of this court's habeas review of whether the petitioner "was ordered removed"; that inquiry is limited to "whether such an order in fact was issued" and "whether it relates to the petitioner." 8 U.S.C. § 1252(e)(5). "There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." Id. And "[n]o court shall have jurisdiction to review . . . the application of [8 U.S.C. § 1225(b)(1)] to individual aliens." Castro v. U.S. Dep't of Homeland Sec., 835 F.3d 422, 432 (3d Cir. 2016) (emphasis in Castro) (quoting 8 U.S.C. § 1252(a)(2)(A)(iii)). Batioja Cuero's claims regarding the NOER's validity and alleged inapplicability to his circumstances, as well as his statutory and constitutional claims relating to how the immigration officer examined him or served the NOER, are matters that fall within the scope of those jurisdiction-stripping provisions. See id.

The Warden has not addressed whether Batioja Cuero's NOER was authorized by 8 U.S.C. § 1225(b)(1)(A)(i) or (iii); and neither party has briefed whether and to what extent the Suspension Clause is implicated here, including whether Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), might be distinguishable. This court thus denies the Warden's (second) motion for summary judgment, in part, without prejudice, so that this court may obtain the

13

benefit of additional briefing or other proceedings on those issues, according to the schedule set forth in the Conclusion of this Order.

IV.   Ex Post Facto Claim

In the interest of narrowing the scope of issues remaining in this case, this court turns to Batioja Cuero's claim that BOP's decision to deem him ineligible for the application of FSA time credits and failure to transfer him to a halfway house violated the Ex Post Facto Clause. A law "violates the Ex Post Facto Clause if it 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" United States v. Amirault, 224 F.3d 9, 14 (1st Cir. 2000) (quoting Calder v. Bull, 3 U.S. 386, 390 (1798)). "To fall within the ex post facto prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citation and italicization omitted) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)).

Courts have found no ex post facto violation in BOP's recalculation of a non-U.S. citizen's sentence to exclude FSA earned time credits after that person became the subject of a final order of removal. See, e.g., Pineda II, 2024 WL 2860289, at *4 (no ex post facto violation when BOP did not apply credits after issuance of expedited removal order); Cazarez v. Warden, FCI Ft. Dix, No. CV 23-4457 (KMW), 2023 WL 5623035, at *2 (D.N.J. Aug. 31, 2023) (no ex post facto violation in BOP's

14

refusal to apply FSA earned time credits after petitioner's final order of removal was reinstated); Mohammad Omar v. Arviza, No. 1:23-cv-01774, 2024 WL 973984, at *2 n.1 (M.D. Pa. Feb. 20, 2024) (finding ex post facto argument "baseless" as to prisoner whose final order of removal made him ineligible to apply his FSA earned time credits).

In Pineda II, the court observed as follows:

> The FSA is not a retrospective law, and it does not impose punishment; it creates awards for those eligible to earn them. . . . Therefore, the BOP did not violate the Ex Post Facto Clause by removing Petitioner's earned time credits when he became ineligible for application of those credits upon issuance of the expedited removal order against him.

2024 WL 2860289, at *4 (footnotes omitted) (citing Cazarez, 2023 WL 5623035, at *2 (observing that "the same statute which granted [the petitioner] the ability to earn [time] credits is the same enactment which denies him the ability to apply them to his release")).

By the same token here, Batioja Cuero "was not so much deprived of credits he already earned, as he was simply rendered ineligible to apply them to his sentence." Cazarez, 2023 WL 5623035, at *2. He has had notice of the immigration detainer at all times relevant to his petition. And his ability to earn FSA time credits was "from the beginning subject to the proviso that he would be unable to apply those credits if he were ever the subject of an order of removal." Id. Accordingly, Batioja Cuero's ex post facto claim does not provide grounds for granting relief on his § 2241 petition.

15

**CONCLUSION**

For the foregoing reasons, the court directs as follows:

1. The court appoints counsel to represent Batioja Cuero because the interests of justice so require. See 18 U.S.C. § 3006A(a)(2)(B). The clerk shall identify and appoint CJA counsel in accordance with this court's CJA plan.

2. The court grants in part, and denies, in part, the Warden's second motion for summary judgment (doc. no. 8), to the extent consistent with this Order. The court denies the Warden's motion in part, without prejudice, intending to preserve the following issues for further consideration:

    a. Whether Batioja Cuero's NOER was issued under 8 U.S.C. § 1225(b)(1)(A)(i) or (iii), including whether Batioja Cuero is an "arriving" noncitizen under subsection (i), or another type of removable noncitizen who may be subject to expedited removal under subsection (iii); and

    b. To what extent the Suspension Clause is implicated by the limits on this court's review of Batioja Cuero's NOER, including whether Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), is distinguishable.

3. No later than thirty days after this Order's date, the Warden shall file a (third) motion for summary judgment addressing those specific issues, or a procedural motion requesting a case management conference or hearing.

4. The petitioner's response to the Warden's motion shall be due no later than thirty days after the Warden's summary judgment motion is filed, or fourteen

days after the Warden's procedural motion is filed. A reply may be filed as allowed by the Local Rules.

     5.     The deadlines in this Order may be extended upon a timely motion showing good cause.

     SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 12, 2024

cc:  Jackson Javier Batioja Cuero, pro se
      Heather A. Cherniske, Esq.